UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PRENDA LAW, <br><br> Plaintiff, <br><br> v. <br><br> PAUL GODFREAD, ALAN COOPER, and JOHN DOES 1-10, <br><br> Defendants. | Case No. 1:13-cv-00207 <br><br> Removed from: <br><br> The Circuit Court of St. Clair County, IL Case No. 13-L-0075 |

**DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DISMISS (ECF No. 26)**

**I. INTRODUCTION**

Defendants Paul Godfread and Alan Cooper ("Defendants") respectfully submit this Reply to Plaintiff Prenda Law's ("Prenda" or "Plaintiff") Opposition to Dismiss Pursuant to Minnesota's Anti-SLAPP Statute (ECF No. 26), filed May 20, 2013. For the reasons given, Plaintiff's motion is without merit and its Complaint remains facially deficient.

**II. RELEVANT FACTS AND PROCEDURAL HISTORY**

Defendants hereby adopt and incorporate by reference the relevant facts and procedural history as stated in their Motion to Dismiss (ECF No. 15 at pp. 1-6).

In addition, Defendants bring to the Court's attention that Plaintiff failed to answer and is found to have defaulted in the underlying Minnesota action of which it complains.[1] Oral Default Hr'g., *Alan Cooper v. John Steele, Prenda Law, et al.,* No. 27-cv-13-3463 (4th Dist., Hennepin Cty., MN) (May 21, 2013) (In reference to Prenda, Judge Alton said, "This is fraud, clear and simple … I will be reporting this to the Lawyers Board").

**III. STANDARD OF REVIEW**

To state a claim for defamation, a plaintiff must present facts showing that the defendant made a false statement about the plaintiff, that the defendant made an unprivileged publication of that statement to a third party, and that this publication caused damages. *Krasinski v. United Parcel*

---

[1] Defendants are baffled. Plaintiff acknowledges "Alan Cooper, … filed a complaint against … Prenda Law in … Minnesota," But, Plaintiff next contends "Plaintiff is not a party to Cooper's action." ECF No. 26, pp. 2-3.

*Service, Inc.*, 124 Ill.2d 483, 490 (1998). A defamatory statement is a statement that harms a one's reputation to the extent it lowers them in the eyes of the community or deters the community from associating with them. *Kolegas v. Heftel Broadcasting Corp.*, 154 Ill.2d 1, 10 (1992). A statement is defamatory *per se* if its harm is obvious and apparent on its face. *Owen v. Carr*, 113 Ill.2d 273, 277 (1986). In Illinois, there are five categories of statements that are considered defamatory *per se:* 1) words that impute a person has committed a crime; 2) words that impute a person is infected with a loathsome communicable disease; 3) words that impute a person is unable to perform or lacks integrity in performing her or his employment duties; 4) words that impute a person lacks ability or otherwise prejudices that person in her or his profession; and 5) words that impute a person has engaged in adultery or fornication. *Van Horne v. Muller*, 185 Ill.2d 299, 307 (1998). Although a complaint for defamation *per se* need not set forth the allegedly defamatory words *in haec verba,* the substance of the statement must be pled with sufficient precision and particularity so as to permit judicial review of its defamatory content. See, *Mittelman v. Witous*, 135 Ill.2d 220, 229-30 (1989), abrogated on other grounds by *Kumik v. Starmark Star Marketing & Administration, Inc.,* 156 Ill.2d 16 (1993). Precision and particularity are also necessary so that the defendant may properly formulate an answer and identify any potential affirmative defenses. See, *e.g., Krueger v. Lewis,* 342 Ill. App.3d 467, 470 (2003).

## IV. ARGUMENT

**A. Plaintiff's Claims Lack Precision and Particularity.**

Like a common law fraud claim, defamation *per se* must be pled with a heightened level of precision and particularity. *Green v. Rogers*, 234 Ill.2d 478, 492 (2009), citing *Mittleman* at 229-30. This is because a properly pled defamation *per se* claim relieves the plaintiff of proving actual damages. See, *Bryson v. News America Publications, Inc.*, 174 Ill.2d 77, 88 (1996). Here, Plaintiff attempts to avail itself of that extraordinary presumption*,* but without premising the relevant facts on something more than its mere "belief." ECF No. 2-1, ¶¶ 6, 7.

**1. Plaintiff Cannot Show Defendants Published Statements to a Third Party.**

Plaintiff pleads "Defendants have published copious volumes of such false statements to many third parties, theoretically extending to every person on Earth through the Internet." ECF 2-1, p. 2 ¶3. Plaintiff's failure to specify *to whom* the allegedly defamatory matter was communicated renders its Complaint insufficient to survive a motion to dismiss. See, e.g., *Edelman, Combs &*

*Latturner*, 338 Ill. App. 3d at 168 (memorandum published to "John Doe" insufficient because "it cannot be determined from the complaint to whom or under what circumstances the allegedly libelous statements were communicated"); *Lykowski v. Bergman*, 299 Ill. App. 3d 157, 164 (1998) (holding that a complaint was factually deficient because it cannot be determined from the complaint to whom the allegedly libelous statements were communicated; "allegations that the libelous statements were transmitted 'to the newspapers' … is not particularly helpful in this regard"). As noted above, conclusory factual assertions are insufficient to state a cause of action, even if they generally inform a defendant of the nature of the claim being alleged. *Adkins*, 129 Ill. 2d at 519-20. Rather, "a defamation per se claim must be pled with a heightened level of precision and particularity." *Green*, at 495.

2. **Plaintiff Fails to Show Defendants Made any False Statements about the Plaintiff.**

Plaintiff premises its allegations, in part, "upon the *fact* that [both written and oral] statements Godfread has made to Prenda [and its agents] have appeared in substantially the same form in Internet postings." ECF No. 2-1, ¶ 6 (emphasis added). Yet, Plaintiff proffers neither evidence nor explanation in its pleadings as to the form or content of these statements. No oral transcripts. No emails or letters in its possession. No *"facts."* Nothing attributable to Godfread at all to show how "those statements have appeared, or been incorporated, in comments on the Internet sites referenced herein." *Id.*

Far from being "clear" and "obvious," Plaintiff's Complaint identifies Godfread, Cooper and John Does 1-10 as defendants. But it also identifies 1) statements made by John Balls (ECF No. 2-1, ¶ 31); 2) sixty-six (66) statements made under seventeen (17) distinct screen names (*id*. at ¶¶ 33-99); and 3) thirty-six (36) additional comments attributable to no one in particular (*id*. at ¶¶ 102, 108, 114, 120 & 125). Of those 103 comments[2] Plaintiff attributes none to Godfread or Cooper, nor does he suggest which of the 54 sources[3] may be Godfread or Cooper. Rather, Plaintiff tosses about

---

[2] Plaintiff identifies Cooper as the source of "the false and defamatory statements" made by Godfread. As Defendants previously noted, the comments go back as far as June 4, 2012—five months before Cooper and Godfread ever met. ECF No. 15, p.14 n.9.

[3] Plaintiff argues it is possible that the Defendants posted the alleged defamatory comments online by inventing a fictitious name in order to post the comment anonymously. ECF No. 2-1, p.9 ¶ 30. This allegation amounts to nothing more than "sheer speculation." *Hadley v. GateHouse Media Freeport Holdings, Inc.*, No. 12-cv-1548, 2012 U.S. Dist. LEXIS 98674, *6-7 (N.D. Ill. 2012). ECF No. 15, pp.14-15.

allegations in a factual vacuum. Nonetheless, this has not deterred Plaintiff from characterizing Godfread and Cooper as "major contributor[s] and participant[s]" in said postings.[4]

In fact, the only instance of alleged defamation Plaintiff can attribute to Defendants are "certain false and defamatory statements" from "a complaint filed in the District Court for the Fourth Judicial District of Minnesota."[5] ECF No. 2-1, ¶ 6. Yet once more, and befitting of its pleading practice, Plaintiff does not identify what in the Minnesota complaint is defamatory or where it appears on the websites complained of.

As it stands, Defendants have no idea what *exactly* Plaintiff is accusing them of. To determine whether a statement is protected from defamation claims, one must first know what it is they are alleged to have said. By not pleading either the defamatory statements or words that Defendants used or identifying any postings Defendants allegedly made, Plaintiff has rendered impossible both meaningful judicial scrutiny and the Defendants' formulation of an appropriate responsive pleading or defense. However, such hollow allegations do serve to underscore the frivolous and retaliatory nature of the suits Plaintiff has filed.

**B. Defendants' Motion to Dismiss is Governed by Minnesota's Anti-SLAPP Statute.**

Defendants hereby adopt and incorporate by reference the relevant law and arguments made in their Motion to Dismiss (ECF No. 15 at pp. 6-17) concerning the applicability of the Minnesota anti-SLAPP statute to the case at bar.

Despite Defendants' "lengthy and misleading analysis of Illinois choice-of-law provisions," Plaintiff arrives at the same interpretation of the case law, albeit a different application. Plaintiff contends that Minnesota law should *not* apply to Defendants' defenses because "Defendants made *and published everywhere*, which includes Illinois, false and defamatory statements."[6] ECF No. 26, p. 5.

> Defendants' argument that Plaintiff "alleges that a tort was committed … in Minnesota" (Mot. at p. 12) is demonstrably false; there is no such allegation in the Complaint and Defendants have failed to offer any evidence otherwise.

---

[4] The allegation against Cooper as a "participant in the community of anonymous Internet posters" is at odds with the fact that at all relevant times, and to this day, Cooper has not had an Internet account. ECF No. 2-1, ¶ 7.

[5] Which Plaintiff now inexplicably asserts "[a]s the Complaint in this matter makes clear, the allegations in the Minnesota complaint are *not* among those for which Plaintiff seeks damages." ECF No. 26, p. 3.

[6] Plaintiff fails to delineate how this same argument would not apply to or include Minnesota, especially with it being part of "everywhere". Nor does Plaintiff cite any authority as to how "publishing" trumps where the speech "originates" for purposes of defamation.

*Id.*, p. 7.

Even if Plaintiff's unfounded burden-shifting were true, Plaintiff itself identifies Godfread as an attorney who "practices at 100 S. Fifth Street, Suite 1900, Minneapolis, Minnesota" and Cooper as "an individual residing in Mille Lacs County, Minnesota." ECF 2-1, ¶¶ 2-1. Furthermore, Plaintiff served its Complaint upon both Godfread and Cooper at their residences in Minnesota. Plaintiff's own pleadings establish that Defendants are citizens of Minnesota, live in Minnesota and work in Minnesota. As such, any defamatory statements made by them would originate in Minnesota. As Plaintiff acknowledges "[t]he cases Defendants cite applied the law of a state where the speech at issue ***originated*** within that state." ECF No. 26, p. 5. Is it now the Plaintiff's contention that whenever Godfread and Cooper felt compelled to defame Plaintiff they travelled several hours to and from Illinois to do so?

### C. Plaintiff Identifies a Molehill; Labels it a Mountain.

> *"Trend: the general movement over time of a statistically detectable change."*[7]
> *—Merriam-Webster Dictionary*

There are 89 district courts in the 50 states. A total of 94 district courts, if one includes U.S. territories. And from this vast repository Plaintiff mines a solitary ruling in support of its argument that there exists a "trend among Federal jurisdictions against application of State anti-SLAPP statutes to matters pending in Federal Courts." ECF No. 26, p. 9. The nexus of Plaintiff's argument is that anti-SLAPP laws in general are procedural, not substantive, and therefore subrogated by the federal

---

[7] A more accurate example of a trend would be the continuing implications and findings of fraud committed by the Plaintiff. *See, e.g., Hard Drive Prods., Inc. v. Does 1-48*, No. 11-cv-9062, 2012 U.S. Dist. LEXIS 82927, *16 (N.D. Ill. June 14, 2012) (warning Duffy client, "[b]efore naming this defendant in an amended complaint or otherwise moving forward against him, Hard Drive must consider long and hard whether doing so will comport with Rule 11 (b)"); *Sunlust Pictures, LLC v. Does 1-75*, No. 12-cv-1546, 2012 U.S. Dist. LEXIS 121368, *16-17 (N.D. Ill. Aug. 27, 2012) (permitting defendant to proceed anonymously to prevent abusive litigation practices by Duffy client, specifically "the possibility that Sunlust could use inappropriate litigation tactics to 'coerce' a settlement"); *AF Holdings LLC v. John Doe*, Civ. No. 12-cv-01525, 2012 U.S. Dist. LEXIS 104396, *5 (July 25, 2012) (Prenda Law plaintiff's "misrepresentation that the subscriber information records are 'facing imminent destruction' is disingenuous and may run afoul of Rule 11 …"); Hr'g Tr., *Sunlust Pictures, LLC v. Nguyen*, No. 12-cv-1685 p. 20 (M.D. Fl. Nov. 27, 2012) (dismissing case from the bench "for failure to appear at this hearing, for failure to present a lawful agent, for attempted fraud on the Court by offering up [Prenda's paralegal] who has no authority to act on behalf of the corporation as its corporate representative."); *AF Holdings LLC v. Joe Navasca,* No. 12-cv-02396, ECF No. 76 (N.D. Cal. April 23, 2013) (surmising "AF is seeking to dismiss the case in order to avoid an adverse determination on the merits as well as the effect of other unfavorable … dispositive rulings of this Court"); *Ingenuity 13 v. John Doe*, No. 12-cv-08333, ECF No. 130 (C.D. Cal. 2012) (Court issuing sanctions and finding Duffy stole Cooper's identity and committed fraud); *Cooper v. Steele, et al*, No. 27-cv-13-3463 (4th Dist., Hennepin Cty., MN) (Jan. 25, 2013) (Judge Alton at an oral hearing held May 21, 2013 that Prenda had committed "fraud, pure and simple" in usurping Cooper's identity).

rules. *3M Company v. Boulter,* 842 F. Supp. 2d 85, 102 (D.D.C. February 2, 2012).[8] Or as Plaintiff argues "[u]nder the decision in *3M,* the anti-SLAPP statutes are inapplicable in federal courts" everywhere. ECF No. 26, p. 9.

Despite Plaintiff's grant of universal judicial reach to the D.C. court, the *3M* Court dealt with the District of Columbia Anti-SLAPP Act of 2010, D.C. Law 16-5502, and recognized that "other courts, in construing their specific state anti-SLAPP statutes, will come to various conclusions about the applicability of those statutes in a federal court sitting in diversity." *3M* at 109. For example, and as Plaintiff notes in the next paragraph: "three federal circuits have held that anti-SLAPP laws apply in federal court." ECF No. 26, p. 10.

Most importantly, unlike *3M* this was an action initiated in state court. If the Plaintiff is subject to the heightened burden of proof set forth in an anti-SLAPP act if they file their case in local court, but can avoid being subject to those standards if they file in federal court, that result will promote *precisely* the type of forum-shopping and inequitable results *Erie* was designed to avoid. *See, e.g., United States ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963, 973 (9th Cir. 1999) ("Plainly, if the [California] Anti-SLAPP provisions are held not to apply in federal court, a litigant interested in bringing meritless SLAPP claims would have a significant incentive to forum-shop. Conversely, a litigant otherwise entitled to the protections of the Anti-SLAPP statute would find considerable advantage in a federal proceeding.").

1. **Plaintiff's Argument Exhibits Control Issues.**

Thirteen days after the *3M* decision kicked off Plaintiff's "trend", the D.C. District reversed its position, finding the D.C. Anti-SLAPP Act of 2010 Act *does* incorporate "substantive rights with regard to a defendant's ability to fend off lawsuits filed by one side of a political or public policy debate aimed to punish the opponent or prevent the expression of opposing points of view." *Sherrod v. Breitbart*, 843 F. Supp. 2d 83 (D.D.C. Feb. 15, 2012) (citing Rep. of the D.C. Comm. on Public Safety and the Judiciary on Bill 18-893 (Nov. 19, 2010). The Court reaffirmed this application four months later. *Farah v. Esquire Magazine, Inc.*, 863 F. Supp. 2d 29, 36-39 (D.D.C. June 4, 2012).

> "[The] D.C. Anti-SLAPP Act 'is substantive—or at the very least, has substantive consequences' and thus is applicable in federal court. … It was certainly the intent of

---

[8] Though this case is reported, Plaintiff chose instead to cite it by an erroneous civil action number: No. 11-cv-1526 (D.D.C. 2011). The correct number is No. 11-cv-152**7**.

the D.C. Council and the effect of the law—dismissal on the merits—to have substantive consequences."

*Id.* at 36 n.10 (citations omitted).

Long story short, the *3M* decision is neither controlling nor relevant.

**D. The Remand Remains Inane.**

Plaintiff insists "[t]his Court lacks jurisdiction, however, because one of the two Plaintiffs, Alpha Law Group, is a citizen of the same state as at least two of the Defendants." Exhibits and pleadings filed by the Defendants not only disprove this assertion, but indicate the Plaintiff and its counsel are engaged in fraud upon the Court.

On February 15, 2013 John Steele of Prenda Law sent the following email to Defendant Godfread:

> "*It is my understanding that several other people have either recently sued you, or are in the process of serving you.* As I explained to you earlier this week, my personal suit against you should be filed in Florida early next week. Despite the intensity of the litigation that is starting, I want to assure you that out of professional courtesy I will do everything I can to accommodate the various court hearings you will be involved in."

ECF No. 15-8 (emphasis added). That same day, Defendant Godfread was served a copy of the original complaint. ECF No. 24-2. Shortly thereafter, on February 20, 2013, Defendant Cooper was served a copy of the original complaint. ECF No. 24-3.

These facts were well within Plaintiff's purview. Nonetheless, on February 21, 2013 Plaintiff's counsel filed an amended complaint intentionally misrepresenting to the clerk that none of the Defendants had been served and so leave of court was unnecessary.[9] ECF No. 24-1.

Any claim that Defendants had not been served prior to filing the amended complaint, or that Plaintiff was unaware of such service, was subverted on February 22, 2013 in an email from Steele to Godfread:

> "As you know, *Mr. Cooper has been served in two separate Illinois suits* with additional suits currently being filed."

---

[9] 35 ILCS 5/2-616, in contrast to FRCP 15, contains no period of time during which an amendment to the pleadings made without leave of court. 3 ILPRAC § 26:1; *Westfield Ins. Co. v. Birkey's Farm Store*, 924 N.E.2d 1231, 1247 (Ill. App.3d 2010) ("A party's right to amend pleadings … is not absolute or unlimited"). An amendment to a pleading made without leave of court is a nullity. *Moyer v. Southern Illinois Hospital Service Corp.*, 327 Ill.App.3d 889, 895 (Ill.App.3d 2002); *Kurczaba v. Pollock*, 742 N.E.2d 425, 439 (Ill. App.3d 2000) (collecting cases) ("while a filing is a part of the public record upon its submission and acceptance by the circuit court, it is not a part of a judicial proceeding, *e.g.,* a *valid* filing, until leave to file has been granted."); *Midwest Bank & Trust Co. v. Village of Lakewood*, 447 N.E.2d 1358, 1362 (Ill. App.3d 1983).

ECF No. 15-8 (emphasis added).

Plaintiff has not disputed these facts, nor can it.

## V. CONCLUSION

Any damage, real or imagined, to Plaintiff's reputation is entirely self-inflicted.

                                            Respectfully submitted,

/s/ Jason E. Sweet
Counsel for Defendants
Paul Godfread and Alan Cooper
*Admitted Pro Hac Vice*

Booth Sweet LLP
32R Essex Street
Cambridge, MA 02139
T: (617) 250-8619
F: (617) 250-8883
jsweet@boothsweet.com
BBO # 668596

/s/ Erin Kathryn Russell
Counsel for Defendants
Paul Godfread and Alan Cooper

The Russell Firm
233 South Wacker Drive, 84th Floor
Chicago, IL 60607
T: (312) 994-2424
F: (312) 706-9766
erin@russellfirmchicago.com
ARDC # 6287255

## CERTIFICATE OF SERVICE

    The undersigned hereby certifies that on May 28, 2013, he caused the foregoing to be filed with the Court via its CM/ECF electronic filing system, thereby serving a copy on all parties of record.

                                                      /s/ Jason E. Sweet