UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AF HOLDINGS LLC, | No. C-12-2396 EMC |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANT'S MOTION FOR ATTORNEY'S FEES** |
| JOE NAVASCA, | **(Docket No. 84)** |
| Defendant. | |

Previously, this Court granted Plaintiff AF Holdings, LLC's motion for voluntary dismissal but with prejudice rather than without (as requested by AF). Because of the dismissal with prejudice, Defendant Joe Navasca has now filed a motion for attorney's fees and costs pursuant to the Copyright Act. Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **GRANTS** Mr. Navasca's motion.

## I. DISCUSSION

A. <u>Legal Standard</u>

The Copyright Act includes a fee- and cost-shifting provision which states as follows:

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505.

In the instant case, there is no dispute that Mr. Navasca is the prevailing party. Thus, the only issue is whether the Court, in its discretion, should award fees and costs.

In *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994), the Supreme Court noted that, under the Copyright Act,

> [p]revailing plaintiffs and prevailing defendants are to be treated alike, but attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion. "There is no precise rule or formula for making these determinations," but instead equitable discretion should be exercised "in light of the considerations we have identified."

*Id.* at 534.

The Court also noted that nonexclusive factors that could be considered in making a fee/cost determination included "'frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Id.* at 534 n.19.

According to the Ninth Circuit, the degree of success obtained is another factor that may be considered. *See Halicki Films, LLC v. Sanderson Sales & Mktg.*, 547 F.3d 1213, 1230 (9th Cir. 2008). However, "'[t]he most important factor in determining whether to award fees under the Copyright Act[] is whether an award will further the purposes of the Act'" – the primary objective of the Act being "to 'encourage the production of original literary, artistic, and musical expression for the good of the public.'" *Sofa Entm't, Inc. v. Dodger Prods.*, 709 F.3d 1273, 1280 (9th Cir. 2013).

B.  Factors

The factors above weigh strongly in favor of Mr. Navasca. Each is discussed briefly below.

1.  Degree of Success

There is no dispute that Mr. Navasca completely prevailed in the instant case. The case was dismissed with prejudice in its entirety.

2.  Frivolousness/Objective Unreasonableness

AF's case was frivolous and objectively unreasonable in that it never presented any evidence (although it had the opportunity to do so) to support its claim that it has standing to assert a claim for copyright infringement. AF claimed standing based on an assignment to AF, which was signed by Alan Cooper on behalf of AF. However, the signature by Alan Cooper appears to have been a forgery, as Judge Wright concluded in his recent sanctions order. In its papers, AF suggests that there was no forgery and that Alan Cooper's "repudiation [of the assignment] was orchestrated by

2

attorney [Paul] Godfread [who now represents Alan Cooper] and other pro-piracy advocacy groups," Opp'n at 5, but this is sheer speculation. It is not surprising that Alan Cooper did not "initiate his repudiation spontaneously," Opp'n at 4, because he did not even know that his signature had been improperly used until he was notified of such. To the extent AF continues to argue that the assignment was valid because the Copyright Act simply requires a signature from the assignor to be valid, that misses the point this Court has continually made – *i.e.*, that, "'even if there was a sufficient transfer for purposes of the Copyright Act, which focuses on proper authorization by the copyright transferor, not the transferee, that is a separate issue from . . . whether AF has Article III standing in this Court to assert infringement based on claimed ownership of the copyright at issue.'" Docket No. 76 (Order at 6); *see also* Docket No. 51 (Order at 3).

Aside from the Alan Cooper problem above, AF's case was frivolous or objectively unreasonable in other ways. For example, AF's decision to name Mr. Navasca as the infringer was not based on an adequate factual investigation. In a prior order, this Court criticized AF's decision to name Mr. Navasca as the alleged infringer simply because he best fit the demographic that is attracted to its content. *See* Docket No. 51 (Order at 3). The Court went on to note that were there were others in the household who also fit that demographic. *See* Docket No. 51 (Order at 3). To the extent AF argued that Mr. Navasca was the likely infringer because he works in technical support at a gaming company and is the most knowledgeable person in his household about computers, the Court pointed out that "one does not need to be tech savvy in order to download information from a computer – or at least there is no evidence of such." Docket No. 51 (Order at 3-4).

Furthermore, the way that AF has litigated this case is highly questionable. For example:

• AF filed an emergency motion to compel, *see* Docket No. 38 (motion), even though, at the time it filed the motion, Mr. Navasca's discovery responses were not even due yet. *See* Docket No. 50 (Order at 1-2) (Vadas, J.) (denying motion to compel on this basis).

• AF professes that the Court's undertaking ruling was the reason why it chose not to proceed with this case, *see, e.g.*, Opp'n at 1, but AF never filed a motion to reconsider with respect to the Court's undertaking ruling, even though the Court stayed its undertaking ruling for the express purpose of giving AF the chance to file a motion to reconsider. *See* Docket No. 51 (Order at 6).

3

1  •   Although AF maintains that Mr. Navasca has improperly spoliated evidence, it has offered
2  no real support for this claim. First, as the Court has previously noted: "The alleged infringement
3  took place in January 2012. This lawsuit was not filed until several months later, *i.e.*, until May
4  2012. During his deposition, Mr. Navasca testified that he has regularly used a software 'cleaning'
5  program since he first purchased his computer three years earlier. He also testified that he has
6  regularly used the program (about twice a month) since January 2012, *i.e.*, since the date of the
7  alleged infringement. That being the case, any evidence about the past infringement in January 2012
8  was probably deleted well before the lawsuit was even initiated in May 2012." Docket No. 51
9  (Order at 4). Second, it is not clear that the software cleaning program that Mr. Navasca used
10 *irrevocably* destroys electronic files. Notably, even after "Judge Vadas instructed AF to 'review the
11 expert declaration that [Mr.] Navasca filed with his letter brief, to fully understand the purpose and
12 effect of CCleaner,'" AF does not appear to have done anything. Docket No. 76 (Order at 7).

•   As this Court indicated in a prior order, AF was likely motivated to file its motion to stay
discovery in February 2013, *see* Docket No. 53 (motion), in order to keep its 30(b)(6) deposition
from going forward; to deprive Mr. Navasca of evidence needed to oppose AF's then-anticipated
motion to reconsider the undertaking ruling; and to prevent adverse information from being brought
to light which could be used against it in the proceeding before Judge Wright of the Central District
of California. *See* Docket No. 76 (Order at 3).

### 3. Motivation

AF's motivation to bring suit is problematic given its apparent lack of standing.
Furthermore, even if AF did have standing, the fact that someone may have illegally downloaded the
copyrighted work does not justify AF's decision to sue Mr. Navasca specifically. As discussed
above, the factual investigation done by AF prior to identifying Mr. Navasca as the alleged infringer
was inadequate. Furthermore, as indicated by the findings made by Judge Wright in his case, AF
does not appear to have been motivated to file suit in order to protect the copyrighted work at issue.
Rather, AF's business model was to sue people for downloading pornography in order to coerce
settlements. *See* Mot., Ex. A (Order at 4).

4

For the above reasons alone, the "motivation" factor weighs strongly in favor of Mr. Navasca, and against AF. However, one final consideration has been offered by Mr. Navasca, which raises even more concern on the part of the Court with respect to AF's motivation. More specifically, Mr. Navasca has offered evidence – the Neville declarations – which indicate that persons affiliated with AF used the alias "sharkmp4" to post links on the Pirate Bay website to many of the copyrighted works *in order to induce users to download the works so that they could then be sued for copyright infringement*. This evidence corroborates Judge Wright's finding that the motivation for this and similar suits is to sue and coerce settlement.

The Court acknowledges that AF has in its brief attacked the Neville declarations as unreliable on various grounds – for example, because the opinions contained therein are offered by an individual who has not been qualified as an expert; because the original declaration was secured by an attorney of purportedly questionable ethics; because the methodology employed is problematic; and because the opinions are qualified (*e.g.*, finding it probable or likely that persons affiliated with AF were responsible). But notably, what AF has *not* done is offer any *counter-evidence* such as a declaration from Mr. Steele in which he denies that he is "sharkmp4" or other evidence that AF did not take steps to induce users to download the subject works. This evidence could easily have been offered by AF as a part of its opposition brief. AF's failure to submit any factual denial under oath is telling.

4. Compensation/Deterrence

AF argues that "[t]here is nothing for the Court to deter here, because [AF] brought meritorious claims against [Mr. Navasca]." Opp'n at 10. For the reasons discussed above, that argument is without merit.

Moreover, given AF's conduct, there is a strong argument in favor of awarding fees as a deterrent, both with respect to AF and other persons or entities that might contemplate a similar business model that is not intended to protect copyrighted work but instead designed to generate revenues through suits and coerced settlements.

///

///

### 5. Furthering the Purpose of the Copyright Act

As noted above, the primary objective of the Copyright Act is "to 'encourage the production of original literary, artistic, and musical expression for the good of the public.'" *Sofa Entm't*, 709 F.3d at 1280. But here AF has not acted to protect original expression but rather to capitalize on coerced settlements. As Mr. Navasca points out, it is noteworthy that AF has not recognized any revenue through any sources other than litigation (*e.g.*, through legitimate licensing of the copyrighted work). *See* Mot. at 11 (quoting from AF's 30(b)(6) deposition).

Furthermore, Mr. Navasca legitimately points out that,

> [b]ecause copyright law ultimately serves the purpose of enriching the general public through access to creative works, it is peculiarly important that the boundaries of copyright law be demarcated as clearly as possible. To that end, defendants who seek to advance a variety of meritorious copyright defenses should be encouraged to litigate them to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement.

*Fogerty*, 510 U.S. at 527.

### 6. Summary

Each of the factors above weighs strong in favor of an award of fees, and therefore, the Court, in its discretion, concludes that an award of fees is warranted in the instant case.

## C. Amount of Fees

With respect to the amount of fees, Mr. Navasca essentially asks the Court to award him the lodestar.

### 1. Reasonable Hourly Rate

Mr. Navasca claims that a reasonable hourly rate for Mr. Ranallo (his primary counsel) is $250 and for Mr. Pietz (who participated in the 30(b)(6) deposition of AF and who has represented defendants in other cases involving AF, including the Judge Wright case) $300. Mr. Navasca admits that Mr. Ranallo actually billed him less. *See* Ranallo Decl. ¶ 7 (stating that "I represented Mr. Navasca at a severely discounted rate in this action, as I have done with a number of innocent BitTorrent defendants in similar circumstances"). Although not entirely clear, this is probably the case with Mr. Pietz as well. Mr. Navasca argues that, although he is asking for more than his attorneys billed for, that is permissible. *See, e.g.*, *Yahoo!, Inc. v. Net Games, Inc.*, 329 F. Supp. 2d

1179, 1183 (N.D. Cal. 2004) (Walker, J.) (in trademark infringement case, stating that "courts award the fee that would be charged by reasonably competent counsel, not the fee due under the particular agreement between the fee applicant and its attorneys").

Because AF does not challenge the hourly rates requested, and because the Court finds the rates reasonable (even if not the actual billing rates) given the experience and skill of counsel, the Court does not dwell on this issue any further. *See also Crescent Publ'g Group, Inc. v. Playboy Enters.*, 246 F.3d 142, 151 (2d Cir. 2001) (refusing "to declare a per se rule that the actual billing arrangement places a ceiling on the amount the prevailing party can recover through a fee award under section 505, especially in light of the district courts' broad discretion in awarding fees"; ultimately concluding that, "for prevailing parties with private counsel, the actual billing arrangement is a significant, though not necessarily controlling, factor in determining what fee is 'reasonable'"); *Pinkham v. Camex, Inc.*, 84 F.3d 292, 294 (8th Cir. 1996) ("conclud[ing] that the copyright statute provides for 'reasonable' fees based on a lodestar figure represented by the reasonable hourly rate multiplied by the hours expended in the litigation; the actual fee arrangement between the client and the attorney is immaterial").

2. <u>Reasonable Number of Hours</u>

While AF does not challenge the reasonableness of the hourly rate, it does challenge the reasonableness of the number of hours claimed. AF makes two arguments: (1) all hours related to the 30(b)(6) deposition of AF should be excluded because the deposition was not really taken for use in this case but for use in other cases involving AF, and (2) Mr. Ranallo's hours are duplicative in that he is charging for work that he already did in other AF cases (*e.g.*, Judge Breyer's *Trinh* case).

The first argument is without any merit. Just because the deposition was ultimately used in other lawsuits does not mean that it was not legitimately taken for this case. Notably, the Court allowed the deposition to go forward in the first place because AF stated, at the time, that it would ask the Court to reconsider its undertaking ruling. *See* Docket No. 56 (Order at 1-2) (stating that "[i]t is fair for Mr. Navasca to take the deposition because he is entitled to explore AF's contention that it does have standing . . . – an issue which informed the Court's prior decision to order an

7

undertaking by AF and which will be a part of AF's anticipat[ed] motion to reconsider"). The fact that AF ultimately decided not to move to reconsider cannot be blamed on Mr. Navasca.

As for the second argument – *i.e.*, AF's contention that many of the hours in this case are duplicative of the hours in *Trinh* (*e.g.*, both cases involved briefing on the undertaking issue and on fees) – it is also problematic. Simply because both cases involved similar motions and issues does not mean that none of the hours in this case should count. Indeed, as Mr. Navasca fairly points out, this case involved more litigation than *Trinh* because discovery was at issue in this case but not in *Trinh*. Also, even where there were similar motions between the two cases – *e.g.*, the undertaking motion and the fee motion – there were some markedly different facts at issue in the two cases. For instance, at the time that the defendant moved for an undertaking in *Trinh*, the Alan Cooper issue had not yet surfaced, and Mr. Lutz had not yet been deposed in another case. In contrast, those events had transpired by the time that Mr. Navasca filed his motion for an undertaking here.

The Court, however, does give some weight to AF's point that there was some overlap between the two cases such that counsel for Mr. Navasca, having had the benefit of the work already completed in *Trinh*, could have litigated this case more efficiently. For instance, the law in both cases was the same and, even though there were some new facts by the time that this case was being litigated, there was still an overlap with respect to other "old" facts – *e.g.*, AF's practice of coercing settlements, AF's reliance on an IP address, and counsel's experience and skill. Taking into account both the differences in the cases as well as the overlap, the Court concludes that a "haircut" of 5% is justified.[1] *Cf. Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) (stating that, where there is a concern regarding duplicative hours, a "district court can impose a small reduction, no greater than 10 percent – a 'haircut' – based on its exercise of discretion and without a more specific explanation").

---

[1] To the extent AF suggests that the award should be minimal – as Mr. Ranallo has asked for only minimal fees in another AF case ($3,850) which also addressed the undertaking issue, *see AF Holdings, LLC v. Magsumbol*, No. C-12-4221 SC (N.D. Cal.) (Docket No. 54) (motion, filed on June 13, 2013) – that is not fair because this case involved notably different work, including, for example, the deposition of AF and the emergency motion to compel filed by AF.

8

Mr. Navasca has requested a total of $20,442.50 in fees.[2] A haircut of 5% results in a total fee award of **$19,420.38**.

D. Amount of Costs

The only argument that AF makes regarding costs is that all expenses related to the 30(b)(6) deposition of AF should be excluded because the deposition was not really taken for use in this case but for use in other cases involving AF. This argument, as discussed above, has not merit. Accordingly, the Court grants Mr. Navasca the entirety of his costs – *i.e.*, **$3,111.55** (covering the creation of a mirror image of Mr. Navasca's hard drive, the depositions (including transcripts), airfare for Mr. Pietz to travel to and from the 30(b)(6) of AF, and the retention of Mr. Neville). *See* Ranallo Decl. ¶ 17; Pietz Decl. ¶ 12; Ranallo Reply Decl. ¶ 4.

## II. CONCLUSION

For the foregoing reasons, the Court grants Mr. Navasca's motion for fees and costs and awards fees in the amount of $19,420.38 and costs in the amount of $3,111.55. The total award is $22,531.93.

This order disposes of Docket No. 84.

IT IS SO ORDERED.

Dated: July 22, 2013

_____
EDWARD M. CHEN
United States District Judge

---

[2] This represents $17,562.50 for the services of attorney Nicholas Ranallo ($250 hourly rate, 70.25 hours), *see* Ranallo Decl. ¶¶ 14-16; Ranallo Reply Decl. ¶ 3, and $2,880 for the services of attorney Morgan Pietz, *see* Pietz Decl. ¶¶ 10-11 ($300 hourly rate, 9.6 hours).