UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| AF Hodlings, LLC,<br><br>        Plaintiff,<br><br>v.<br><br>John Doe(s),<br><br>        Defendant(s). | Civil Nos.  12-1445 (JNE/FLN)<br>                  12-1446 (JNE/FLN)<br>                  12-1447 (JNE/FLN)<br>                  12-1448 (JNE/FLN)<br>                  12-1449 (JNE/FLN)<br><br>**ORDER** |

---

Paul Hansmeier for Plaintiff
Paul Godfread for Third Party Witness Alan Cooper[1]

---

On September 30, 2013 the undersigned Magistrate Judge held an evidentiary hearing to investigate whether or not this Court was a victim of fraud. This order sets forth the Court's findings of fact based on the testimony elicited at the hearing and related papers. In short, the Court concludes that AF Holdings used fraudulent copyright-assignment agreements, attached to each complaint in all five of the instant cases, in order to expedite discovery and leverage settlement agreements. The remedy for this fraudulent conduct is set forth in this order.

This order also addresses Alan Cooper's motion to intervene (ECF No. 44), AF Holdings' motion to supplement the record (ECF No. 53) and AF Holdings' motion to disqualify the undersigned Magistrate Judge (ECF No. 59). For the reasons set forth below, Cooper's motion to intervene is **DENIED as moot**, AF Holdings' motion to supplement the record is **GRANTED**, and

---

[1] Alan Cooper was employed by John Steele as a caretaker for his cabin in northern Minnesota from 2006-2012.

AF Holdings' motion to disqualify the undersigned is **DENIED**.

## I. PROCEDURAL HISTORY

In these five cases, AF Holdings—through its attorney Michael K. Dugas—attached a copyright-assignment agreement to each complaint. Each agreement was purportedly signed by Alan Cooper on behalf of AF Holdings.[2] AF Holdings requested the extraordinary relief of expedited discovery in these cases on the basis that it was necessary to identify the individuals associated with the IP addresses through which their copyrighted material was allegedly accessed unlawfully. ECF No. 4.[3] That motion was granted, under specific conditions. ECF No. 10. Among the conditions imposed was a requirement that AF Holdings use any information disclosed in response to its subpoena solely for the purpose of protecting its rights as set forth in the complaint. It was also a condition of the Court's order that AF Holdings file under seal a copy of (1) any written communication between AF Holdings and the John Doe(s) or (2) a transcript of any oral communication between AF Holdings and the John Doe(s).

Between August 31, 2012 and February 26, 2013, all five cases were voluntarily dismissed.[4] The Court later learned, from sealed filings made pursuant to the Court's August 3, 2012 order (ECF

---

[2] The agreement attached as Exhibit B to the complaint in 12-cv-1445 and 12-cv-1448 is for a copyrighted work called "Sexual Obsession" and the agreement attached as Exhibit B to the complaint in 12-cv-1446, 12-cv-1447 and 12-cv-1449 is for a copyrighted work called "Popular Demand."

[3] Unless otherwise noted, all ECF citations in this order refer to the docket in case 12-cv-1445.

[4] The five cases were voluntarily dismissed on the following dates: 12-cv-1445 on November 19, 2012; 12-cv-1446 on October 25, 2012; 12-cv-1447 on October 24, 2012; 12-cv-1448 on August 31, 2012; and 12-cv-1449 on February 26, 2013.

No. 10), that four of the five cases settled for amounts ranging from $3,500.00 to $6,000.00.[5] On November 29, 2012, Alan Cooper—through a letter from his lawyer—sought leave from this Court to file a motion to intervene regarding the alleged improper use of his name and signature by AF Holdings, LLC and Ingenuity 13, LLC. ECF No. 18 for 12-cv-1449. The Court expressly took no action on that request. ECF No. 19 for 12-cv-1449.

Several months later, this Court became aware of an order entered by Judge Otis Wright II of the U.S. District Court in the Central District of California in a case called *Ingenuity 13, LLC v. John Doe*, 2013 U.S. Dist. LEXIS 64564, at *6-7 (C.D. Cal. May 6, 2013).[6] Like the five cases before this Court, the case before Judge Wright was a copyright infringement lawsuit in which the plaintiff— Ingenuity 13, LLC—attached a copyright-assignment agreement that purported to be signed by Alan Cooper. Judge Wright found that AF Holdings and Ingenuity 13 were off shore entities formed at some point in 2010 and that they have no assets other than several copyrights to pornographic movies. *Id.* at 6.[7] Judge Wright also found that, through willing local counsel, the principals advanced a litigation strategy that involved monitoring BitTorrent download activity of their copyrighted material, recording associated IP addresses, filing suit in federal court and then

---

[5] Settlement agreements were reached in all cases except 12-cv-1446. In cases 12-cv-1445, 12-cv-1447 and 12-cv-1448, settlement monies were to be paid to Prenda Law, Inc. In case 12-cv-1449, the settlement monies were to be paid to AF Holdings, LLC.

[6] Judge Wright's order includes a chart of relationships that he found between the attorneys and entities involved. *Ingenuity 13, LLC.*, LEXIS 64564 at *13.

[7] Evidence from another case provides more information on the potential relationship between these entities and John Steele. *See First Time Videos, LLC. v. Paul Oppold*, Case No. 12-cv-01493, ECF No. 37, Attachments 1-29 (a forensic analysis suggests Steele himself may have uploaded the copyrighted works to BitTorrent).

seeking expedited discovery in order to identify the individuals associated with the relevant IP addresses. *Id.* This process put pressure on those sued to settle quickly, as hundreds of Defendants throughout the country have done for several thousand dollars each. *Id.*[8] Judge Wright concluded that the principals' representations about their operations, relationships, and financial interests varied from "feigned ignorance to misstatements to outright lies."[9]

Of particular interest to this Court was Judge Wright's finding that "[t]he Principals [Steele and Hansmeier] stole the identity of Alan Cooper [ ] and fraudulently signed the copyright assignment for 'Popular Demand' using Alan Cooper's signature without his authorization, holding him out to be an officer of AF Holdings."[10] Informed by this finding, this Court reopened these five cases on June 20, 2013 for the purpose of determining whether it was a victim of fraud. ECF No. 13. A copy of Judge Wright's May 6, 2013 order was attached to this Court's June 20, 2013 order.

---

[8] As stated by Judge Wright, "[AF Holdings and its related entities and attorneys] discovered the nexus of antiquated copyright laws, paralyzing social stigma, and unaffordable defense costs." *Ingenuity 13, LLC.*, LEXIS 64564 at *2.

[9] Informed by Judge Wright's findings, other federal courts have taken a closer look at copyright cases brought by AF Holdings, LLC. *E.g. AF Holdings LLC v. Joe Navasca*, 2013 U.S. Dist. LEXIS 102249, at *8 (N.D. Cal. July 22, 2013) (holding that AF Holdings designed a business model to generate revenues through suits and coerced settlements not to protect copyrighted work); *AF Holdings, LLC v. Sandipan Chowdhury*, 2013 U.S. Dist., Case No. 12-cv-12105, ECF No. 34 (Dist. Mass. October 22, 2013) (entering final judgment for costs and attorneys' fees, totaling $21,393.60 and noting that AF Holdings is an alias of its counsel, Prenda Law, Inc., its principals, attorneys John L. Steele, Paul A. Duffy and Paul R. Hansmeier, and its paralegal, Mark Lutz).

[10] At least one other Court has since reached the same conclusion. *See AF Holdings LLC v. Joe Navasca*, supra at fn 9.

4

The Court scheduled a case management conference in early August. ECF No. 15.[11] The purpose of the case management conference was to determine whether the parties could resolve the Court's concern that it had been defrauded by AF Holdings. Because the Court's concern was not resolved following the case management conference, an evidentiary hearing was scheduled for September 30, 2013 to determine whether the Court was the victim of a fraud. ECF No. 36.

## II. LEGAL STANDARD

The Court "has the power to conduct an independent investigation in order to determine whether it has been the victim of fraud." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) (citing *Universal Oil Prods. Co. v. Root Refining Co.*, 328 U.S. 575, 580 (1946)); *see also* Fed. R. Civ. P. 11, Advisory Committee's note to 1993 Amendments ("[Rule 11] does not inhibit the court in punishing for contempt, in exercising its inherent powers, or in imposing sanctions, awarding expenses, or directing remedial action authorized under other rules or under 28 U.S.C. § 1927.").[12] This inherent power is necessary to preserve the integrity of the courts, for "tampering with

---

[11] On July 29, 2013—less than two weeks after the case-management conference was noticed—Paul Hansmeier filed a Notice of Withdrawal and Substitution of Counsel informing the Court that he would be substituting as counsel for AF Holdings and that Michael Dugas withdrew as counsel. ECF No. 17. This Court held that the notice was not effective under Local Rule 83.7(b) because it would delay the progress of these cases. ECF No. 34. Despite Dugas's August 19, 2013 Notice of Withdrawal pursuant to 83.7(a), the Court denied his request to be excused from the case-management conferences and ordered him to establish good cause for his requested withdrawal as counsel, in accordance with Local Rule 83.7(c).

[12] A party who is the victim of a fraud on the Court may also initiate an independent action. Fed. R. Civ. P. 11, Advisory Committee's Note to 1993 Amendments. Alan Cooper—who contends that he was a victim of the fraud on the Court— has initiated an independent action against John Steele, Prenda Law, Inc., AF Holdings, LLC and Ingenuity 13, LLC. *See* Case No. 13-cv-2622 (D. Minn., filed September 23, 2013).

administration of justice in this manner involves . . . far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public." *Chambers*, 501 U.S. at 44 (quoting *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944)) (internal quotations omitted).

To this end, the sole focus of the September 30 hearing was the authenticity of the copyright-assignment agreements that were attached to the complaints in each of these five cases. ECF No. 36 at 2. AF Holdings bore the burden of establishing the authenticity of each assignment. *Id.* The Court's order scheduling the hearing expressly required that "an officer of the plaintiff, capable of testifying as to the authenticity of each document, shall appear in person at the evidentiary hearing." *Id.* at 3. On September 30, 2013—over the course of two-and-a-half hours—the Court heard testimony from John Steele, Jason Flesher,[13] Brent Berry[14] and Alan Cooper. No officer or other representative of AF Holdings testified at the hearing.

### III. FINDINGS OF FACT

Based on the sworn testimony and other documents submitted by AF Holdings in relation to the September 30, 2013 evidentiary hearing, this Court finds:

---

[13] Flesher, a friend of Steele, testified that he met Cooper four to five years ago. Flesher testified that he had conversations with Cooper's wife at Steele's cabin in northern Minnesota in which she expressed anger and frustration about Steele involving Cooper as the head of a porn company. Flesher testified that he was not familiar with Cooper's signature and that he had never seen either copyright-assignment agreement in question.

[14] Berry, a friend of Steele, testified that he has known Cooper since 2006. Berry testified that he never saw either copyright-assignment agreement in question and that, although he was familiar with Cooper's signature, he was unable to confirm that Cooper's signatures on the assignments were authentic.

1.  AF Holdings failed to meet its burden of proving the authenticity of the copyright-assignment agreements for "Popular Demand" and "Sexual Obsession." Both documents purport to be signed by Alan Cooper, on behalf of AF Holdings, LLC.[15] John Steele testified that he was familiar with both agreements,[16] but did not witness Cooper sign either of them. ECF No. 64 at 3:9-17. Steele testified that he had no knowledge of whether Cooper personally signed the agreements. *Id.* Steele also testified that he was familiar with Cooper's authentic signature and that what was purported to be Cooper's signature on the assignments was not authentic. *Id.* at 10:7-15.

2.  Steele testified that he introduced Cooper to Mark Lutz, the sole principal of AF Holdings. Steele testified that the introduction occurred via telephone. Specifically, Steele testified that after calling Lutz on March 18, 2011, he handed the phone to Cooper who spoke to Lutz. *Id.* at 7:1-8. Steele only heard Cooper's side of the conversation. *Id.* Steele testified that he also heard Cooper's side of a November 2011 conversation with Lutz. *Id.* Steele described Lutz as the controlling member of AF Holdings and testified that he understood Cooper to be working with Lutz in the capacity of "a helper." *Id.* at 8:16-21.

    Based upon Cooper's side of these two conversations, Steele testified that it was his "understanding that he [Cooper] had given authority to Mark and his people if he wasn't available, that he could sign the various documents as long as he understood what the document related to . . . ." *Id.* at 7:21-25, 8:1-3. Finding Steele's testimony regarding his "understanding" of an agreement between Cooper and Lutz to be vague, the Court asked directly, "Did you hear Mr. Cooper give Mr. Lutz authority or permission to sign his name to documents?" Steele replied "yes." *Id.* at 7:9-11. The Court expressly disbelieves Steele's testimony in this regard.

3.  Contrary to the Court's August 28, 2013 order, AF Holdings failed to produce an officer who was capable of testifying to the authenticity of each copyright-assignment agreement. *See* ECF No. 36. At the end of the hearing, the Court inquired about who was going to testify on behalf of AF Holdings. Mr. Hansmeier informed the Court that Mark Lutz—the "sole officer" of AF Holdings—was informed of the hearing and planned to attend, but for unknown reasons did not get

---

[15] The "Sexual-Obsession" copyright-assignment agreement purports to be between Raymond Rogers and AF Films. At the hearing, Steele clarified that AF Films does not exist and that its name on the assignment as "assignee" was a typographical error that should have read AF Holdings. ECF No. 64, 9:16-21.

[16] Steele testified that he registered the assignments with the copyright office in 2011. ECF No. 64, at 2:5-14.

7

on his scheduled flight from Miami, Florida to Minneapolis, Minnesota.[15] ECF No. 66 at 2-9.

4. Alan Cooper testified that he (1) never spoke to Mark Lutz by telephone, (2) did not sign the agreements, (3) did not give anyone else permission to sign his name on the agreements, (4) was not familiar with the agreements until someone informed him that his signature appeared on the documents and (5) never held any position with AF Holdings, LLC.[16] ECF No. 65 at 2-6. The Court finds Cooper's testimony credible.

## IV. CONCLUSIONS OF LAW

The copyright-assignment agreements attached as Exhibit B to each complaint in each of these five cases are not what they purport to be. Alan Cooper denies signing either agreement and also denies giving anyone else the authority to sign them on his behalf. AF Holdings failed to produce any credible evidence that the assignments were authentic. The Court has been the victim of a fraud perpetrated by AF Holdings, LLC. The Court concludes that the appropriate remedy for this fraud is to require AF Holdings to return all of the settlement money it received from all of the Defendants in these cases, and to pay all costs and fees (including attorneys' fees) incurred by the Defendants. After all settlement payments are returned and other fees are paid, all five cases should be dismissed on the merits, with prejudice.

---

[15] Hansmeier further informed the Court that Steele and Lutz were scheduled to be on the same flight and that Steele searched for Lutz the morning of their scheduled departure. Hansmeier represented to the Court that Steele entered Lutz's apartment and, after finding him absent, searched for him at the "usual places [he] recreate[s]." Cooper's attorney, Mr. Godfread, noted the recent pattern of Lutz failing to appear when he is scheduled to testify under oath. ECF No. 66 at 2-9.

[16] Cooper testified that he received a text message from Steele's mother-in-law during the winter of 2012 that alerted him to the use of his signature on the agreements. ECF No. 65 at 2:12. *See also* ECF No. 62, Ex. 3 and ECF No. 56.

The Court further concludes that, once all of the ill-gotten gains are fully disgorged from AF Holdings, it would not be a wise use of the Court's limited resources to *sua sponte* attempt to fully untangle the relationship between Hansmeier, Steele, Duffy, Dugas, Lutz and Prenda Law, on the one hand—and the Plaintiff, AF Holdings, LLC., on the other. Such investigation can more effectively be conducted by federal and state law enforcement at the direction of the United States Attorney, the Minnesota Attorney General and the Boards of Professional Responsibility in the jurisdictions where the attorneys involved in this apparent scheme are licensed to practice law.

Finally, to the extent that Alan Cooper was a victim of the fraud upon the Court, it appears that his rights can be fully vindicated in the case he has pending before this Court. *See* Case No. 13-cv-2622.

## V. ORDER

Based upon all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. AF Holdings / Prenda Law Inc. shall, on or before November 20, repay the money received from the four John Does who agreed to settle the claims against them.[17]

2. AF Holdings / Prenda Law, Inc. shall pay all attorneys' fees and costs incurred by the five Doe Defendants. The attorneys who represented the Doe Defendants shall submit Affidavits itemizing all costs and fees on or before November 13, 2013.

3. The Clerk of Court shall send a copy of this order to the following individuals and entities for the purpose of further investigation:

    A. The United States Attorney's Office for the District of Minnesota.

---

[17]   The Court is aware that Prenda Law Inc. was dissolved in July 2013. However, it is unclear where Prenda's assets—including the settlement agreement monies from these cases—were transferred. *See Ingenuity 13, LLC v. John Doe*, Case No. 12-cv-8333 (C.D. Cal.), ECF No. 240 (declaration of former local counsel Brett Gibbs that includes exhibits of what appear to be Prenda Law, Inc.'s financial records).

ATTN: John R. Marti, Acting United States Attorney. Address: U.S. Courthouse, 300 S. 4th St., Suite 600, Minneapolis, MN 55415.

B. The Minnesota Attorney General's Office. ATTN: Lori Swanson, Attorney General. Address: 1400 Bremer Tower, 445 Minnesota St., St. Paul, MN 55101.

C. The Minnesota Lawyers Professional Responsibility Board, Office of Lawyers Professional Responsibility. Address: 1500 Landmark Towers, 345 St. Peter St., St. Paul 55102.

D. The Attorney Registration and Disciplinary Commission of the Supreme Court of Illinois. Address: 130 E. Randolph Dr., Ste. 1500, Chicago, IL 60601-6219.

4. Alan Cooper's motion to intervene (ECF No. 44) is **DENIED as moot**. Any outstanding relief sought by Cooper can be realized through his suit against Steele, et al. *See* Case No. 13-cv-2622.

5. AF Holdings motion to supplement the record (ECF No. 53) is **GRANTED** and the hearing scheduled for November 12, 2013 to consider the motion is **CANCELLED**.[18]

6. AF Holdings motion to disqualify the undersigned Magistrate Judge (ECF No. 59) is **DENIED**. The Court has reviewed the motion, the memorandum filed in support of it (ECF No. 60), and the Declaration of Paul Hansmeier (ECF No. 61) and finds nothing therein that would require this Court's disqualification. *See* CODE OF CONDUCT FOR UNITED STATES JUDGES, CANON 3A(6) (2011) (The prohibition on public comment on the merits does not extend to public statements made in the course of the judge's official duties, to explanations of court procedures, or to

---

[18] AF Holdings seeks to supplement the record with an affidavit from Kimberly Eckenrode, John Steele's mother-in-law. The affidavit explains Mrs. Eckenrode's understanding of Cooper's involvement with Steele's clients. The affidavit specifically seeks to clarify the reason why Mrs. Eckenrode sent Cooper a text during the winter of 2012: she claims it was not for the purpose of notifying Cooper that his name was being used in connection with adult content companies, but rather to notify him that she discovered a document online that was purportedly signed by him. The content of the affidavit is immaterial to the findings made by the Court in this order, but Plaintiff's motion is granted in the interest of establishing a complete record.

scholarly presentations made for purposes of legal education).

DATED: November 6, 2013          *s/Franklin L. Noel*
                                                       FRANKLIN L. NOEL
                                                       United States Magistrate Judge