IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PRENDA LAW, INC., | ) | Case No. 1:13-cv-04341 |
| | ) | |
| | ) | Removed from: |
| Plaintiff, | ) | |
| | ) | The Circuit Court of St. Clair County, IL |
| v. | ) | Case No. 13-L-0075 |
| | ) | |
| PAUL GODFREAD, ALAN COOPER | ) | Consolidated with 1:13-cv-01569 |
| and JOHN DOES 1-10, | ) | |
| | ) | |
| Defendants. | ) | |

COME NOW Defendants Paul Godfread and Alan Cooper, and respectfully submit this Itemization of Attorneys' Fees. On January 23, 2014, the Court granted Defendants' Motion for Sanctions [ECF No. 51] and ordered Defendants to file an itemization of fees on or before November 8, 2013 [ECF No. 59]. Defendants submit the itemization and supporting exhibits and declarations as attachments hereto: invoices for fees and costs from The Russell Firm and Booth Sweet, LLP (Exhibit A),[1] a chart from the AIPLA Economic Survey 2013 showing average attorney fees for intellectual property law partners (Exhibit B), affidavits of Erin Russell of The Russell Firm, and Jason Sweet of Booth Sweet, LLP, the firms that represent Defendants (Exhibits C and D) and invoices from court reporter Mary Decker and local counsel Laura Beasley in support of Defendants' claim for costs (Exhibit E).

I.      **It Is Proper for the Court to Award Defendants Their Attorney's Fees.**

The Court may award to a party the "excess costs, expenses, and attorney's fees reasonably incurred" as a result of an opposing attorney's sanctionable conduct. 28 U.S.C. § 1927. Defendants request an award of all of their attorney's fees, costs and expenses related to

---

[1] The entries recorded for certain billable events have been abbreviated to avoid disclosing the substance or content of any privileged communications (i.e., "Confer: with P. Godfread").

[2] *See also Rhein v. McCoy*, No. 09-cv-02368, 2011 U.S. Dist. LEXIS 106206, *18-21 (D. Colo. Sept. 16, 2011); *Squires Golf Club v. Bank of America,* No. 10-cv-6734, 2011 U.S. Dist. LEXIS 3764, *10 (E.D. Pa. Mar. 22, 2011);

the conduct subject to the Court's February 3, 2014 Order, specifically all attorneys' fees and

costs relating to Plaintiff's attempts to have this matter remanded to St. Clair County as well as

all attorney's fees and costs incurred in filing and briefing Defendants' Motion for Sanctions.

## II.    The Court Should Use the Lodestar Method to Assess the Fees Reasonably Incurred.

At the same time, Section 1927 permits an award only of those fees, costs, and expenses

"reasonably incurred." 28 U.S.C. § 1927. Case law is sparse in this circuit and others on how

fees, costs, and expenses "reasonably incurred" are to be calculated, but the Seventh Circuit has

instructed: "In calculating attorney's fees [under Section 1927] a district court should determine

the reasonable number of hours expended and the reasonably hourly rate for such expenditures."

*Kotsilieris v. Chalmers,* 966 F.2d 1181, 1187 (7th Cir. 1992). Without using the term, the

instruction in *Kotsilieris* describes what is known as the "lodestar" method, which many district

courts have employed in determining the fees "reasonably incurred" under Section 1927. See,

e.g., *Tillman v. New Line Cinema Corp.,* No. 05-cv-910, 2008 U.S. Dist. LEXIS 105200, *8

(N.D. Ill. Dec. 31, 2008), *aff'd,* 374 Fed App'x 664 (7th Cir. 2010).[2]

Under the lodestar method, as *Kotsilieris* suggests, attorney's fees are calculated as "the

hours reasonably expended multiplied by the reasonable hourly rate." *Johnson v. GDF, Inc.,* 668

F.3d 927, 929 (7th Cir. 2012); *see also Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983). The

lodestar approach forms the "centerpiece" of attorney's fee determinations. *Pickett v. Sheridan

Health Care Ctr.,* 664 F.3d 632, 639 (7th Cir. 2011) (internal citation omitted); *accord

Gastineau v. Wright,* 592 F.3d 747, 748 (7th Cir. 2010) (calling the lodestar method "the

---

[2] *See also Rhein v. McCoy,* No. 09-cv-02368, 2011 U.S. Dist. LEXIS 106206, *18-21 (D. Colo. Sept. 16, 2011); *Squires Golf Club v. Bank of America,* No. 10-cv-6734, 2011 U.S. Dist. LEXIS 3764, *10 (E.D. Pa. Mar. 22, 2011); *Stanich v. Hissong Group, Inc.,* No. 09-cv-0143, 2010 U.S. Dist. LEXIS 98709, *9-10 (S.D. Ohio Sept. 20, 2010); *Larin Corp. v. Alltrade, Inc.,* No. 06-cv-1394, 2008 U.S. Dist. LEXIS 65193, *8-18 (C.D. Cal. July 11, 2008).

touchstone for a district court's calculation of attorney's fees"). It yields a presumptively reasonable fee, and the presumption is a strong one. *Perdue v. Kenny A. ex reI. Winn,* 559 U.S. 542, 552 (2010); accord *Pickett*, 664 F.3d at 639. Therefore, to determine the compensable fees, costs, and expenses that Defendants reasonably incurred for purposes of Section 1927, there are "three determinations required to set that figure: (1) the number of hours reasonably expended by … counsel, (2) the reasonable hourly rate for those services, and (3) costs." *Johnson*, 668 F.3d at 931.

A.     **The Hours Expended by Defendants' Attorneys in This Matter Are Reasonable.**

Defendants' attorneys expended a reasonable amount of hours in their defense over the course of a year in litigating the remand and sanctions issues. Attorney Erin Russell spent a total of 46.8 hours from April of 2013 through February of 2014 on the remand issue, and an additional 6.7 hours on this memorandum and itemization of fees as of the date of filing. Attorney Jason Sweet spent a total of 7.8 hours on the remand issue—and another .9 hours on his portion of this memorandum and itemization of fees. Russell and Sweet made every effort to avoid duplicating each other's work and to minimize the cost of the representation to Defendants, as their time records reflect.

The lodestar method entitles the petitioning party to compensation only for attorney time "reasonably expended." *Hensley,* 461 U.S. at 433; *Johnson,* 668 F.3d at 931. Time spent unreasonably cannot be compensated. *People Who Care v. Rockford Dep't of Ed.,* 90 F.3d 1307, 1314 (7th Cir. 1996). In particular, time that is "excessive, redundant, or otherwise unnecessary" will be disallowed, *Hensley,* 461 U.S. at 434*; Johnson,* 668 F.3d at 931, as will time spent on unrelated matters, *Gautreaux v. Chicago Housing Auth.,* 491 F.3d 649, 661 (7th Cir. 2007), or time resulting from overstaffing of the case, *Schlacher v. Law Offices of Phillip J Rotche &*

*Assocs., P.C.,* 574 F.3d 852, 858 (7th Cir. 2009). The party seeking fees has the burden of proving the reasonableness of the hours worked by submitting evidence supporting those hours. *Hensley,* 461 U.S. at 433; *Spegon v. Catholic Bishop of Chicago,* 175 F.3d 544, 553 (7th Cir. 1999). The fee award may be reduced if the documentation is inadequate. *Hensley,* 461 U.S. at 433.

**B.      Defendants' Attorney's Fees Are Market Rate and Are Presumptively Reasonable.**

The reasonable hourly rate is "derived from the market rate for the services rendered." *Johnson,* 668 F.3d at 933; *Pickett,* 664 F.3d at 640. The market rate is "the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the kind of work in question." *Stark v. PPM Am., Inc.,* 354 F.3d 666, 674 (7th Cir. 2004). But "[t]he best evidence of an attorney's market rate, however, is his or her actual billing rate for similar work." *Johnson*, 668 F.3d at 927 (citing *Pickett,* 664 F.3d at 640); *see also Mathur v. Bd. of Trustees of S. Ill. Univ.*, 317 F.3d 738, 743 (7th Cir. 2003) ("the attorney's actual billing rate for comparable work is presumptively appropriate to use as the market rate") (internal quotation omitted).

The burden of proving the market rate is on the party seeking fees. *Gautreaux,* 491 F.3d at 659; *Stark,* 354 F.3d at 674. Once that party establishes the market rate, the burden shifts to the opposing party to demonstrate why a lower rate should be awarded. *Gautreaux,* 491 F.3d 649 at 659-60; *Stark,* 354 F.3d at 675. Any reduction requires evidence showing "'a good reason why a lower rate is essential.'" *Pickett,* 664 F.3d at 640 (quoting *People Who Care,* 90 F.3d at 1313).

Defendants easily meet this burden. Defendants submitted affidavits from their counsel, Erin K. Russell and Jason E. Sweet, listing the hourly rates charged by each attorney. *See* Exhibit A hereto. These rates were the normal hourly rates of the attorneys and were the rates charged to Defendants in connection with the adversary proceeding. *See Stark,* 354 F.3d at 675 (affirming

determination that hourly rates were reasonable based on affidavits attesting to hourly rates and payment of the fees at those rates). "[L]awyers who fetch above average rates are presumptively entitled to them, rather than to some rate devised by the court." *Id.* at 1150; *see also Mathur,* 317 F.3d at 743-44 (noting that an hourly rate cannot be adjusted downward "just because the proffered rate is higher than the local rate"); *Top Tobacco, L.P. v. N. Atl. Operating Co.,* Case No. 06-cv-950, 2007 U.S. Dist. LEXIS 66614, *6 (N.D. Ill. Sept. 6, 2007) (rejecting argument that the petitioning attorneys' rates were high for the market and higher than the rates of the opposing party's attorneys). "Lawyers do not come from cookie cutters"; some are able to command a higher price than others. *Gusman v. Unisys Corp.,* 986 F.2d 1146, 1150 (7th Cir. 1993).

These rates were also a relative bargain. Erin K. Russell, owner of The Russell Firm, charged $400 per hour. Jason Sweet, a partner at Booth Sweet LLP, charged $409 per hour. *See* Ex. A. A recent survey conducted by the Law Practice Management Committee of the American Intellectual Property Law Association ("AIPLA") of billing rates for attorneys specializing in intellectual property shows that rate to be below average. Intellectual property partners at private law firms nationwide charge $469 per hour in 2012, on average, with $425 per hour the median rate of those surveyed. Ex. B p. 2 (AIPLA Economic Survey 2013 I-34). In Chicago, where The Russell Firm is located, partners charged an average of $497 per hour in 2012, and a median of $475 per hour. *Id.* In the Boston metropolitan area, where Booth Sweet LLP is based, the survey respondents charged an average of $627 per hour in 2012, and a median of $650 per hour. *Id.*

The hourly billing rates submitted are not just presumptively reasonable as the actual rates charged; their reasonableness is evidenced by the significantly higher rates charged by comparable attorneys. *See generally Triune Star, Inc. v. Walt Disney Co.*, 2009 U.S. Dist. LEXIS

34034, *8 (N.D. Ill. Apr. 23, 2009) (AIPLA survey "confirms the reasonableness of the rates charged" by defendant attorneys); *id.* at *9 (denying request to reduce hourly rates "somewhat higher" than those demonstrated by the AIPLA survey).

Because Defendants have met their burden, Plaintiff's attorneys must now supply "a good reason" to apply lower rates, if they have one. *Pickett,* 664 F.3d at 640 (internal quotation omitted). No such reason exists. The evidence shows that the regular hourly rates charged by Defendants' attorneys are the relevant market rates and are reasonable for purposes of calculating fees under Section 1927.

**C.      No Adjustment to the Lodestar Amount Is Appropriate.**

No adjustment is necessary to the lodestar amount, which represents reasonable hours worked at presumptively reasonable rates. Nor should any adjustment be made, if any could be.

Under other fee-shifting statutes, "once calculated, the lodestar amount may be adjusted." *Johnson,* 668 F.3d at 929. Typically, the adjustment involves increasing (or "enhancing") the lodestar. *See Perdue,* 559 U.S. at 552. But Section 1927 only permits an award of a party's "excess costs," making an enhancement impossible. "A district court may not sanction an attorney for *more* than the excess costs, expenses and fees incurred by the opposing party." *Haynes v. City & County of San Francisco,* 688 F.3d 984, 987 (9th Cir. 2012) (emphasis in original)). Enhancements are in any event awarded only in "rare" and "exceptional" circumstances, *Perdue,* 559 U.S. at 552 (internal quotation omitted). Defendants are not seeking an enhancement.

By the same token, no reduction of the lodestar is possible. The Seventh Circuit has distinguished Section 1927 from Rule 11, characterizing Section 1927 as "a real fee shifting law" and a violation of it as "a form of intentional tort." *Shales v. General Chauffeurs, Sales Drivers*

*and Helpers Local Union No. 330*, 557 F.3d 746, 749 (7th Cir. 2009). As with damages awarded

for an intentional tort, sanctions under Section 1927 "depend on the victim's loss." *Id.* Therefore,

the Seventh Circuit held, the attorney's ability to pay has no effect on the appropriate award. *Id.*;

*see also Hamilton v. Boise Cascade Express*, 519 F.3d 1197, 1205-06 (10th Cir. 2008). The

*Shales* reasoning strongly suggests that, because the lodestar amount represents compensation for

the applicant's loss, the amount should not be reduced based on the kinds of "equitable factors"

some authorities cite. *See* Gregory P. Joseph, *supra*, § 24(D) at 3-48 to 49; *Evans v. City of

Evanston*, 941 F.2d 473,477 (7th Cir. 1991) (criticizing fee awards "figured to the last penny";

there is "no precise rule or formula," and any method "not arbitrary [and] likely to arrive at a fair

fee" will be sustained). In any event, LMC's attorneys have offered only *ad hominem* argument

for a reduction, which is insufficient. No adjustment is necessary or appropriate.

### III.     The Amount of Sanctions Sought Is Reasonable in the Circumstances of this Case.

In light of the nature of the case, the work performed, and the outcome obtained, the

requested sanction of $22,894.20 to The Russell Firm and $3,558.30 to Booth Sweet, LLP is

more than proper. The hours and hourly rate are eminently reasonable for the year-long defense

of an action in which Plaintiff and its counsel committed significant wrongdoing sufficient to

warrant sanctions under FRCP 11, Section 1927 and the Court's inherent authority to sanction.

The sweeping trail of deception for which Prenda and Duffy have been sanctioned in this

case began immediately upon removal of the St. Clair County matter to the Southern District of

Illinois and continued throughout the proceedings before this Court. Plaintiff made its first claim

regarding the sham amended complaint on March 1, 2013, hours after the removal was filed and

docketed. On that date, Duffy sent an email to Attorney Russell claiming that an amended

complaint existed and demanding that Russell withdraw the petition for remand and return the

case to St. Clair County. Defendants expended a great deal of time, effort and resources uncovering the truth about the St. Clair County "amended complaint. That evidence was provided to Judge Herndon in the Southern District and adopted by him in his ruling denying Plaintiff's Motion to Remand.

Yet despite having had the truth about the amended complaint laid bare in the Southern District before Judge Herndon, Prenda and Duffy reasserted the same arguments before this Court in a "renewed" Motion to Remand without a scintilla of recognition of the facts uncovered about the alleged amended complaint. When directly asked by this Court about Judge Herndon't ruling on the motion to remand and the amended complaint, Duffy lied.

"The standard is whether the fees are reasonable in relation to the difficulty, stakes, and outcome of the case." *Gastineau,* 592 F.3d at 748 (internal quotation omitted). By that standard, the fees sought herein are more than reasonable. Plaintiff's attorneys created Defendants' costs by attempting to manufacture an amended complaint in a state court to interfere with diversity jurisdiction in two separate federal courts and by continuing to lie about it after overwhelming evidence of the deception was brought to light. Plaintiff's attorney continued to advance arguments rejected by Judge Herndon and this Court after rulings were made, expanding these proceedings unnecessarily and in bad faith.

<div style="margin-left:auto">

Respectfully submitted,

/s/ Erin Kathryn Russell
Counsel for Defendants
Paul Godfread and Alan Cooper

</div>

The Russell Firm
233 South Wacker Drive, 84th Floor
Chicago, IL 60607
T: (312) 994-2424
F: (312) 706-9766
erin@russellfirmchicago.com

ARDC # 6287255

/s/ Jason L. Sweet
Counsel for Defendants
Paul Godfread and Alan Cooper
*Admitted Pro Hac Vice*

Booth Sweet, LLP
32R Essex Street
Cambridge, MA 02139
T: (617) 250-8619
F: (617) 250-8883
jsweet@boothsweet.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 7, 2014, she caused the foregoing to be filed via the Court's CM/ECF electronic filing system, thereby serving a copy on all parties of record.

/s/ Erin Russell